## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**NATASHA KOLLER,**
individually and on behalf
of a class of other similarly
situated individuals,

                    Plaintiff,

**vs.**                                        CASE NO. _____

**BLACKSTONE MEDICAL**
**SERVICES, LLC,**
a Florida limited liability
company,

                    Defendant.
_____/

## CLASS ACTION COMPLAINT
## JURY DEMAND

## INTRODUCTION

1.      This action arises out of Defendant, Blackstone Medical Services, LLC's

("Blackstone") incessant sending of telemarketing text messages to Plaintiff and other

similarly situated persons after those persons asked Blackstone to stop, thus violating

the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(c), its regulations

found at 47 C.F.R. § 64.1200(d), and the Florida Telephone Solicitation Act

("FTSA"), Fla. Stat. § 501.059(5).

2.      Indeed, during the time frame relevant to this Complaint, Blackstone,

upon information and belief, has sent out thousands of unlawful and unwanted text

messages in violation of the TCPA and FTSA, and moreover, when asked to stop,

refused to do so, also in violation of the TCPA and FTSA.

3.      By effectuating these unauthorized text message calls, Blackstone has caused Plaintiff and other affected consumers actual harm, not only because these consumers were subjected to the aggravation that necessarily accompanies mobile spam, but because they necessarily expended time and effort in reading and responding to the annoying messages. Additionally, the continual receipt of spam and such messages diminish cellular battery life, waste data storage capacity, and are an intrusion upon seclusion.

4.      Given the automated, incessant, and unwanted nature of these calls, and the cost of litigation as compared with individual recoveries, a class action is the only practicable means of obtaining redress for Blackstone's illegal telemarketing, and is consistent with both the private right of action afforded by the TCPA and FTSA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

5.      Accordingly, in an effort to enforce this fundamental right to privacy, Plaintiff files the instant class action complaint alleging violations of the TCPA and FTSA.

## JURISDICTION

6.      This Court has federal question subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, as the action arises under the TCPA, a federal law.

7.   This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367, as the

state law claims under the FTSA form part of the same case or controversy as Plaintiff's claims under the TCPA.

8.   This Court has personal jurisdiction over Blackstone and venue is proper in this District because Blackstone directs, markets, and provides its business activities to this District, and because Blackstone's unauthorized marketing scheme was directed by Blackstone to consumers in this District, including Plaintiff.

## PARTIES

9.   Plaintiff, Natasha Koller ("Plaintiff") is a natural person who, at all times relevant to this action, was a resident of the State of Florida.

10.   Defendant, Blackstone Medical Services, LLC ("Blackstone"), is a Florida limited liability company whose principal address is 550 N. Reo Street, Suite 250, Tampa, FL 33609 and whose registered agent for service of process in the State of Florida is Vick Tipnes, 550 N. Reo Street, Suite 250, Tampa, FL 33609.

11.   Blackstone purports to be one of the leading service providers in the home sleep testing industry and was awarded as one of Inc. 5000's fastest growing private companies in 2017, 2018, 2019, and 2020.[1]

12.   Unless otherwise indicated, the use of the Blackstone's name in this Complaint refers to Blackstone and includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees,

---

[1] https://www.blackstonemedicalservices.com/ (Last Visited: Feb. 13, 2024).

representatives, vendors, and insurers of Blackstone Medical Services, LLC.

## OVERVIEW OF THE TCPA AND THE FTSA

13.    Enacted in 1991, at 47 U.S.C. § 227, *et seq.*, "Senator Ernest Hollings, the TCPA's sponsor, described these calls as 'the scourge of modern civilization. They wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone out of the wall.' 137 Cong. Rec. 30, 821 (1991)." *Osorio v. State Farm Bank, F.S.B.*, 746 F. 3d 1242, 1256 (11th Cir. 2014).

14.    Likewise, the Florida Telephone Solicitation Act ("FTSA"), Fla. Stat. § 501.059, was amended in 2021 to further protect consumers from these intrusive nuisance calls by creating a private right of action for do-not-call violations, allowing the recovery of $500 to $1,500 in statutory damages.

15.    "Unrestricted telemarketing," Congress later determined, "can be an intrusive invasion of privacy." *Mims v. Arrow Financial Services, LLC*, 132 S. Ct. 740 (2012).

16.    "Congress determined [this] federal legislation was needed because telemarketers, by operating interstate, were escaping state-law prohibitions on intrusive nuisance calls." *Id.*

17.    In part, the TCPA prohibits "initiat[ing] any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive

telemarketing calls made by or on behalf of that person or entity[.]" 47 C.F.R. § 64.1200(d).

18.    The FCC has recognized that the TCPA and implementing regulations apply to "both voice calls and text calls to wireless numbers including, for example, short message service (SMS) calls[.]" *In re Rules & Regs. Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd 14014, 14115 (2003).

19.    The procedures instituted must meet certain minimum standards, including, but not limited to: (1) having a written policy, available on demand, for maintaining a do-no-call list; (2) informing and training personnel engaged in any aspect of telemarketing on the existence and use of the do-not-call list; (3) recording and honoring do-not-call requests; (4) identifying the caller and person or entity on whose behalf the telemarketing call is being made; (5) applying the do-not-call request to the particular business entity making the call or on whose behalf the call is made; (6) maintaining a record of requests not to receive further telemarketing calls and honoring such for at least five years from the time the request is made. *Id.*

20.    This provision is applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers. 47 C.F.R. § 64.1200(e).

21.    "To constitute telemarketing, the text message must be 'for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services.'" *Id.* (quoting 47 C.F.R.§ 64.1200(f)(12)).

22.    The term "telephone solicitation" means "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person, but such term does not include a call or message (A) to any person with that person's prior express invitation or permission, (B) to any person with whom the caller has an established business relationship, or (C) by a tax exempt nonprofit organization." 47 U.S.C. § 227(a)(4).

23.    In general, courts have also found that text messages fall under § 64.1200(d). *Hand v. Beach Entm't KC, LLC*, 456 F. Supp. 3d 1099, 1124 (W.D. Mo. 2020) (denying motion for summary judgment which argued that "§ 64.1200(d) does not apply to receipt of text messages on a cell phone but rather solely applies to calls made to a 'residential telephone subscriber'); *Doohan v. CTB Inv'rs, LLC*, 427 F. Supp. 3d 1034, 1069 (W.D. Mo. 2019).

24.    The FCC—which develops the rules and regulations implementing the TCPA—has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violation." *In re Rules and Regulations Implementing the TCPA*, 10 FCC Rcd. 12391, at ¶13 (1995).

25.    The Rules and Regulations implementing the TCPA also requires callers to provide an automated opt-out mechanism through which the recipient can easily request to stop the calls. 47 C.F.R. § 64.1200(b)(3); *see also Liotta v. Wolford Boutiques, LLC*, No. 1:16-CV-4634-WSD, 2017 WL 1178083, at *4 (N.D. Ga. Mar. 30, 2017)

("Defendant's failure to include an opt-out mechanism with its text messages, resulted in the precise harm the TCPA provisions aimed to prevent, namely the nuisance and invasion of privacy that result from unwanted text messages").

26.    The FCC has "repeatedly acknowledged the existence of vicarious liability under the TCPA." *Gomez v. Campbell-Ewald Co.*, 768 F.3d 871, 878 (9th Cir. 2014) (citing *In re Joint Petition Filed by DISH Network, LLC et al, for Declaratory Ruling Concerning the TCPA Rules*, 28 FCC Rcd. 6574 (2013) ("FCC 2013 Ruling")). In addition to formal agency, principles of apparent authority and ratification may also provide a basis for vicarious seller liability for TCPA violations. *FCC 2013 Ruling*, 28 FCC Rcd. at 6548 ¶28.

27.    Text messages are "calls" within the context of the TCPA.  *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946 (9th Cir. 2009).

28.    The FCC has specifically ruled that a consumer's prior express consent to receive future text messages may be revoked. *In the Matter of Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C. Rcd. 15391, 15391 (2012) ("*In re SoundBite Communications, Inc.*").

29.    Notably, the Telemarketing Sales Rule, 16 C.F.R. 310 *et seq.* prohibits telemarketers from engaging in, or sellers from causing telemarketers to engage in, conduct that is abusive. 16 C.F.R. § 310.4(b). Abusive conduct includes initiating any outbound telephone call to a person when "[t]hat person previously has stated that he or she does not wish to receive an outbound telephone call made by or on behalf of the

seller whose goods or services are being offered." *Id.* at § 310.4(b)(1)(iii)(A).

## FACTUAL ALLEGATIONS

30.    Plaintiff is the account holder of a cellular telephone number ending in 8855 (the "8855 Number").

31.    Plaintiff is the regular user of the 8855 Number and uses the 8855 Number as her residential telephone line.

32.    During the time frame relevant to this Complaint, Blackstone caused multiple unwanted and unsolicited text messages to be transmitted to the 8855 Number.

33.    Upon information and belief, Blackstone obtained Plaintiff's phone number from Plaintiff's doctor who recommended Blackstone as a provider able to perform a sleep study.

34.    Plaintiff did not give her physician permission to convey to Blackstone that Plaintiff consented to Blackstone's calls.[2]

35.    All of the text messages Blackstone sent to Plaintiff have been for the purpose of soliciting the sale of Blackstone's sleep study. Blackstone's sleep studies are medical procedures and are therefore "consumer goods or services."

---

[2] *See Keim v. ADF MidAtlantic, LLC*, 328 F.R.D. 668, 683 (2018) (The FCC cautioned, however, that the intermediary may only *convey* consent that has actually been provided by the consumer; the intermediary cannot provide consent on behalf the consumer.) (Citations and quotations omitted).

36.    Because Blackstone's text messages were for the purpose of soliciting the sale of its sleep study, which is a consumer good or service, these texts were "telephone solicitations" and/or "telemarketing" under the TCPA and "telephonic sales calls" under the FTSA.

37.    Finally, Blackstone sent or caused to be sent the telephonic sales text messages, thereby making Blackstone a "telephone solicitor" under the FTSA and subjecting it to the TCPA, which applies to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers.

38.    Blackstone did not have Plaintiff's prior express consent to contact her on her cellular phone.

39.    Blackstone did not have Plaintiff's prior written consent to contact her on her cellular phone.

40.    On more than one occasion, the first of which was on or around July 27, 2023, Plaintiff asked Blackstone to stop texting her, but Blackstone continued to send text messages to Plaintiff, the latest of which (as of this writing) was on January 26, 2024. A sampling of the text messages received by Plaintiff can be seen in the screenshots attached hereto as **Exhibit A**.

41.    Despite requirements specifically outlined by the FCC for text messages,[3] Blackstone's text messages fail to provide an opt-out option.

---

[3] *See e.g.*, 12 C.F.R. § 64.1200 *et seq.*

42.     Blackstone sent multiple telemarketing text messages to Plaintiff subsequent to Plaintiff instructing Blackstone to stop.

43.     More specifically, after Plaintiff texted "stop" to Defendant on July 27, 2023, Blackstone sent no less than an additional 35 telemarketing text messages to Plaintiff.

44.     Plaintiff has replied "stop" to Blackstone's text messages no less than 8 times, yet Blackstone continued and continues to send telemarketing text messages to Plaintiff.

45.     When texting "stop" did not work, on November 15, 2023, Plaintiff called Blackstone and informed Blackstone's representative that she had no interest in Blackstone's services and to stop contacting her.

46.     During the November 15, 2023 call, Blackstone's representative confirmed that Blackstone had previously received Plaintiff's do-not-call requests, and agreed to add Plaintiff to Blackstone's internal do-not-call list.

47.     Despite acknowledging Plaintiff's do-not-call requests, Blackstone continued and continues to send telemarketing text messages to Plaintiff.

48.     Blackstone sent telemarketing text messages to Plaintiff more than thirty days after Plaintiff's initial stop request on July 27, 2023. For example, Blackstone texted Plaintiff on September 19, 2023 and October 25, 2023. The telemarketing text messages Blackstone sent to Plaintiff on September 19, 2023 and October 25, 2023 were each sent more than thirty days after Plaintiff's initial stop request on July 27,

2023.

49.     Blackstone's text messages constitute telemarketing and/or solicitation because the purpose of the text messages was to encourage the purchase of Blackstone's services.

50.     As evidenced by Blackstone's failure to honor Plaintiff's requests to stop texting Plaintiff, Blackstone's internal do-not-call policy (to the extent that it even exists) violates 47 C.F.R. § 64.1200(d) by, among other things, not recording and honoring do-not-call requests.

51.     A quick internet search reveals that other consumers have been subjected to the same treatment:[4]



Christina W
09/15/2023

I've been harassed by this company for almost a year now. After deciding not to proceed with a sleep study, the company continued to call me and text me hundreds of time each day, literally every few minutes for months, even after stating that I did not want to proceed. After blocking 10+ phone numbers, the calls finally stopped for a couple months before picking back up from new numbers.



Sarah R
09/22/2023

Juan harasses you and sends texts alert daily multiple times a day about scheduling a service when I've already told them over 20 times I'm not interested.

---

[4]     *See* https://www.bbb.org/us/fl/tampa/profile/sleep-apnea/blackstone-medical-services-llc-0653-90130035/customer-reviews (Last Visited: Feb. 9, 2024).



**Brittany W**
★☆☆☆☆
                                                                    10/27/2023

They dont take my insurance and they still keep calling and texting from different numbers ( I respond stop to the text and then block the number) trying to get me to pay for the sleep study out of pocket. I have told them verbally over the phone that I am not interested and to remove my number from their list, then they started calling me about another patient. This company seems like a scam



**Jayne H**
★☆☆☆☆
                                                                    12/07/2023

This company will text and call you nonstop and wont stop for anything to get you to schedule a sleep test. Ive blocked 10 different numbers and they keep finding me. I was actually planning to do the test until they called me 19 times in one day. I would never ever give my business to a company that behaves this way.



**Jesus D**
★☆☆☆☆
                                                                    12/27/2023

This company is a nightmare. My doctor made the mistake of sending a sleep study prescription to them right before I went on vacation. I talked to them and explained I will do it when I come back. They have sent me literally hundreds of text messages, and dozens of phone calls, sometimes impersonating the doctor ****** and asking me to do the study before I come back. I was thousands of miles away, and on vacation. I blocked their phone number many times, but they are a very sneaky company changing the caller ID every time they text or call. All this prompted me to check the reviews online. Holy macro! Needless to say, I will never work with these clowns.



**Alvin H**
★☆☆☆☆
                                                                    01/17/2024

This company wont stop harassing me. After I told them I didnt feel comfortable giving them my credit card number and paying for services I had not yet gotten they got rude. I told them I would needed to do more investigation and found out they have been doing this to serveral people. I told them I was no longer intrested in moving forward with them and to stop calling and text. Since than I get atleast 2 message a day and I have told them everytime I am not intrested but they will not stop



**Natoshia T**

★☆☆☆☆                                                    01/19/2024

My dr put in a sleep study for me and I was told I would be hearing from Blackstone. The next day I received a text asking me to call. Then a few hours later received another text saying they had been trying to call me and had been leaving messages but I never had any. I call them and they tell me its covered by my insurance but I have to pay $250. I tell them I dont have the money and will wait for the test. They noted the account. Next day, text messages start again to have me call them to set up my study. I call again and tell them no. Next day comes and they text again, I ignore it. They call me and I tell them again Im waiting. She notes the account. 1 hour later I receive two more text messages from them. So I called and asked to speak to a supervisor and was transferred with no answer. Went back to the same guy and he transferred me again. This time the guy who answered told me that it doesnt work like that when I asked to speak to a supervisor. So I decided to yell at him. He pulls my account up and he says yeah it says youre not interested in the test so I ask why I am being called and texted and he said it was a problem in their end and he promised it wont happen again. Would never do business with a company like this.

52.    Upon information and belief, Blackstone maintains and/or has access to outbound transmission reports for all text messages sent promoting its services and goods. These reports show the dates, times, target telephone numbers, and content of each message sent to Plaintiff and the putative class members.

53.    Upon information and belief, Blackstone maintains and/or has access to inbound transmission reports for all text messages or telephone calls received in response to its text messages sent promoting its services and goods. These reports show the dates, times, the targeted telephone numbers, and content of each message to Defendant.

54.    Blackstone's failure to honor stop requests constitutes abusive telemarketing.

55.    As a result of Blackstone's conduct, Plaintiff suffered a nuisance, invasion of privacy, frustration, diminished storage space, and lost time tending to unwanted text

messages.

56.    Specifically, with respect to waste of time and nuisance, Plaintiff took the time to ask Blackstone to stop sending text messages, only to continue to receive even more text messages. When her request to stop sent via text message was unsuccessful, Plaintiff also took the time to call Blackstone to request it stop sending messages. Yet, Blackstone's continues to send its unwanted telemarketing texts to Plaintiff.

57.    Blackstone's unwanted telephonic sales calls caused Plaintiff and the putative class members harm, including statutory damages, inconvenience, invasion of privacy, aggravation, annoyance, and violation of their statutory privacy rights.

58.    Blackstone's text message spam caused Plaintiff and the putative class members harm, including violations of their statutory rights, trespass, annoyance, nuisance, invasion of their privacy, and intrusion upon seclusion.

## CLASS ALLEGATIONS

59.    Plaintiff brings this case as a class action pursuant to Fed. R. Civ. P. 23, on behalf of herself and all others similarly situated.

60.    Plaintiff brings this case on behalf of the following Classes defined as follows:

All persons within the United States who, within the time frame(s) relevant to this action, (1) received two or more text messages from Blackstone or anyone acting on Blackstone's behalf, (2) within any 12-month period, (3) for the purpose of selling Blackstone's products and/or services, (4) including at least one of those text messages being placed more than 30 days after such person requested that Blackstone stop calling and/or texting, and (5) which messages lacked an opt-out option.

Plaintiff reserves the right to modify the Class definitions as warranted as facts are learned in further investigation and discovery. Blackstone and its employees or agents are excluded from the Class.

61.    **Numerosity:** Blackstone purports to be one of the leading service providers in the home sleep testing industry. As of February 9, 2024, the Company has 210 employees and millions of dollars in annual revenue.[5]

62.    In light of Blackstone's business size, it is reasonable to conclude that Blackstone has placed calls to cellular telephone numbers belonging to thousands of consumers throughout the United States against their express wishes.

63.    The members of the Class, therefore, are believed to be so numerous that joinder of all members is impracticable. The exact number and identities of the members of the Class are unknown at this time and can only be ascertained through discovery.

64.    **Common Questions of Law and Fact:** There are numerous questions of law and fact common to members of the Class which predominate over any questions affecting only individual members of the Class. Among the questions of law and fact common to the members of the Class are:

---

[5] Source: https://www.blackstonemedicalservices.com/vick-tipnes/ (Last viewed: Feb. 12, 2024) ("Today Blackstone has over 200 employees and is a multi-million-dollar revenue company. It has grown into a national company that does business in all 50 states. Blackstone is contracted with over 79 million lives via various Insurance Providers and we provide a level of service to our Patients, Physicians, and Insurance Providers that is unmatched.")

a. Whether Blackstone's messages constitute "telephone solicitations" or "telemarketing" (under the TCPA) or "telephonic sales calls" (under the FTSA);

b. Whether Blackstone continued to send telemarketing text messages after being asked to stop;

c. Whether Blackstone maintains an internal do-not-call list and instructs its employees on how to use the list;

d. Whether Blackstone had any processes or protocols in place to stop texts to persons who asked that the messages stop;

e. Whether Blackstone had the required policies and procedures in place to honor do-not-call requests;

f. Whether Blackstone routinely honors such requests;

g. Whether Blackstone engaged in abusive telemarketing practices;

h. Whether Blackstone failed to provide an opt-out mechanism in its texts;

i. Whether Blackstone's violations of the TCPA were willful or knowing; and

j. Whether Blackstone is liable for damages, and the amount of such damages.

The common questions in this case are capable of having common answers. If Plaintiff's claim that Blackstone routinely transmits telemarketing text messages after being asked to stop, Plaintiff and the putative class members will have identical claims

capable of being efficiently adjudicated and administered in this case.

65.     **Typicality:** Plaintiff's claims are typical of the claims of members of the Class in that they arise from Blackstone's uniform conduct and are based on the same legal theories. Plaintiff has no interests antagonistic to, or in conflict with, the Class. On information and belief, Plaintiff avers that Blackstone treated her in same manner as they have treated hundreds, if not thousands of individuals.

66.     **Protecting the Interests of the Class Members:** Plaintiff understands her duties as a class representative and will fully and adequately assert and protect the interests of the Class. Plaintiff has retained counsel competent in the prosecution of complex class action litigation. Accordingly, Plaintiff is an adequate representative and will fairly and adequately protect the interests of the Class.

67.     **A Class Action is Superior and Advisable:** A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit, because individual litigation of the claims of all members of the Class is economically unfeasible and procedurally impracticable. While the aggregate damages sustained by the Class are in the millions of dollars, the individual damages incurred by each member of the Class resulting from Blackstone's wrongful conduct are too small to warrant the expense of individual lawsuits. The likelihood of individual class members prosecuting their own separate claims is remote, and, even if every member of the Class could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases.

68.     Furthermore, the prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Blackstone.  For example, one court might enjoin Blackstone from performing the challenged acts, whereas another may not. Additionally, individual actions may be dispositive of the interests of the Class, although certain class members are not parties to such actions.

### COUNT I
### VIOLATION OF 47 U.S.C. § 227(c) THROUGH 47 C.F.R. § 64.1200(d)

69.     Plaintiff incorporates the allegations contained in paragraphs 1-65 as if fully set forth herein.

70.     Under the TCPA, 47 U.S.C. § 227(c)(5), a person may bring a claim for receiving more than one call in a 12-month period in violation of rules and regulations prescribed under 47 U.S.C. § 227(c).

71.     One set of such regulations are codified at 47 C.F.R 64.1200(d)(1-6) and require companies to implement certain minimum policies and procedures prior to making any telemarketing call.

72.     These regulations prohibit companies from initiating any call for "telemarketing purposes" to a residential telephone subscriber unless it has instituted certain minimum procedures. 47 C.F.R § 64.1200(d).

73.     Specifically, these regulations provide:

> No person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such

person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:

(1) **Written policy**. Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.

(2) **Training of personnel engaged in telemarketing**. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.

(3) **Recording, disclosure of do-not-call requests**. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request. If such requests are recorded or maintained by a party other than the person or entity on whose behalf the telemarketing call is made, the person or entity on whose behalf the telemarketing call is made will be liable for any failures to honor the do-not-call request. A person or entity making a call for telemarketing purposes must obtain a consumer's prior express permission to share or forward the consumer's request not to be called to a party other than the person or entity on whose behalf a telemarketing call is made or an affiliated entity.

C.F.R § 64.1200(d).

74.    Under 47 C.F.R § 64.1200(e), the rules set forth in 47 C.F.R. § 64.1200(d) are applicable to any person or entity making telephone solicitations or telemarketing

calls to wireless telephone numbers.

75. No presence on any registry is required under 47 C.F.R. § 64.1200(d).

76. Furthermore, while 47 C.F.R. § 64.1200(c) (creating the National Do-Not-Call Registry) only applies to "telephone solicitations," which excludes calls with consent or with an established business relationship, 47 C.F.R. § 64.1200(d) applies to the much broader "telemarketing," making no exception for whether the call was initially made with consent.

77. "To constitute telemarketing, the text message must be 'for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services.'" *An Phan v. Agoda Co. Pte. Ltd.*, 351 F. Supp. 3d 1257, 1261 (N.D. Cal. 2018), *aff'd sub nom. Phan v. Agoda Co. Pte. Ltd.*, 798 F. App'x 157 (9th Cir. 2020) (quoting 47 C.F.R.§ 64.1200(f)(12)).

78. The protections of 47 C.F.R. § 64.1200(d) cover cellular telephones. 47C.F.R. § 64.1200(e); *see also In re Rules & Regs. Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd 14014, 14115 (2003) (recognizing the TCPA and implementing regulations apply to "both voice calls and text calls to wireless numbers including, for example, short message service (SMS) calls[.]"); *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946 (9th Cir. 2009) (holding text messages are "calls" within the context of the TCPA); *Hand v. Beach Entm't KC, LLC*, 456 F. Supp. 3d 1099, 1124 (W.D. Mo. 2020) (denying motion for summary judgment which argued that "§ 64.1200(d) does not apply to receipt of text messages on a cell phone but rather solely applies to calls made

to a 'residential telephone subscriber').

79.    The FCC has specifically ruled that a consumer's prior express consent to receive future text messages may be revoked. *In the Matter of Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C. Rcd. 15391, 15391 (2012) ("*In re SoundBite Communications, Inc.*").

80.    The FCC—which develops the rules and regulations implementing the TCPA—has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violation." *In re Rules and Regulations Implementing the TCPA*, 10 FCC Rcd. 12391, at ⁋13 (1995).

81.    The FCC has "repeatedly acknowledged the existence of vicarious liability under the TCPA." *Gomez v. Campbell-Ewald Co.*, 768 F.3d 871, 878 (9th Cir. 2014) (citing *In re Joint Petition Filed by DISH Network, LLC et al*, for Declaratory Ruling Concerning the TCPA Rules, 28 FCC Rcd. 6574 (2013) ("*FCC 2013 Ruling*")). In addition to formal agency, principles of apparent authority and ratification may also provide a basis for vicarious seller liability for TCPA violations. *FCC 2013 Ruling*, 28 FCC Rcd. at 6548 ⁋28.

82.    Blackstone sent telemarketing texts without implementing several of these policies and procedures.

83.    Plaintiff and the putative class members made requests to Blackstone not to receive telemarketing text messages.

84.     Because Blackstone continued to send telemarketing texts to Plaintiff and putative class members *after* they asked Blackstone to stop, Blackstone thereby failed to honor Plaintiff's and the putative class members' do-not-call requests and continued to send telemarketing text messages.

85.     Blackstone's refusal to honor the do-not-call requests is indicative of its failure to implement a written policy for maintaining a do-not-call list and to train its personnel engaged in telemarketing or solicitation on the existence and use of the do-not-call-list. Thus, Blackstone has violated 47 C.F.R. § 64.1200(d).

86.     Plaintiff received more than 30 telemarketing text messages in a 12-month period after asking Blackstone to stop, and each putative class member received at least two.

87.     Pursuant to section 227(c)(5) of the TCPA, Plaintiff and the putative class members are entitled to an award of $500.00 in statutory damages, for each and every negligent violation.

88.     In the event Blackstone's conduct is found to be knowing or willful, Plaintiff and putative class members are entitled to an award of $1,500.00 in statutory damages per violation.

89.     Plaintiff and the putative class members are also entitled to and seek injunctive relief prohibiting Blackstone's unlawful conduct in the future, pursuant to section 227(c)(5).

## COUNT II
## Violation of 47 U.S.C. § 227(c) and 16 C.F.R. § 310.4(b)(iii)(A)

90.     Plaintiff incorporates the allegations contained in paragraphs 1-65 as if fully set forth herein.

91.     The Defendant violated the TCPA by calling, within a 12-month period, persons who asked Defendant to stop placing calls and/or text messages to their telephone number.

92.     In pertinent part, 16 C.F.R. § 310.4(b)(1)(iii)(A) provides:

(1) It is an abusive telemarketing act or practice and a violation of this Rule for a telemarketer to engage in, or for a seller to cause a telemarketer to engage in, the following conduct:

   (iii) Initiating any outbound telephone call to a person when:

   (A) That person previously has stated that he or she does not wish to receive an outbound telephone call made by or on behalf of the seller whose goods or services are being offered or made on behalf of the charitable organization for which a charitable contribution is being solicited; […]

93.     The purpose of Defendant's text messages was to offer or promote goods or services for purchase or rental.

94.     Defendant practiced abusive telemarketing when it continued to place sales calls to Plaintiff's and the putative class members' telephone numbers after they told Defendant they did not wish to receive further calls from or on behalf of

Defendant.

95.    Plaintiff and the putative class members made requests to Defendant not to receive text messages from Defendant.

96.    Defendant failed to honor Plaintiff's and the putative class members' opt-out requests.

97.    Pursuant to section 227(c)(5) of the TCPA, Plaintiff and the putative class members are entitled to an award of $500.00 in statutory damages, for each and every negligent violation.

98.    In the event Defendant's conduct is found to be knowing or willful, Plaintiff and putative class members are entitled to an award of $1,500.00 in statutory damages per violation.

99.    Plaintiff and the putative class members are also entitled to and seek injunctive relief prohibiting Defendant's illegal conduct in the future, pursuant to section 227(c)(5).

## COUNT III
### Violation of 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(b)(3)

100.    Plaintiff incorporates the allegations contained in paragraphs 1-65 as if fully set forth herein.

101.    Under the TCPA, 47 U.S.C. § 227(c)(5), a person may bring a claim for receiving more than one call in a 12-month period in violation of rules and regulations prescribed under 47 U.S.C. § 227(c).

102.   One set of such regulations are codified at 47 C.F.R 64.1200(b)(3) and require companies to "provide an automated, interactive voice–and/or key press-activated opt-out mechanism for the called person to make a do-not-call request."

103.   "The TCPA's prohibition against auto dialed calls applies to text message calls as well as voice calls." *Liotta*, 2017 WL 1178083, at *2 n. 1.

104.   Blackstone sent telemarketing texts and failed to provide any opt-out mechanism.

105.   Plaintiff nevertheless responded to Blackstone's messages "stop" but Blackstone ignored her repeated requests.

106.   Because Blackstone fails to include in its text messages an automated or key press-activated opt-out mechanism to make a do-not-call request, it violates the TCPA.

107.   Pursuant to section 227(c)(5) of the TCPA, Plaintiff and the putative class members are entitled to an award of $500.00 in statutory damages, for each and every negligent violation.

108.   In the event Blackstone's conduct is found to be knowing or willful, Plaintiff and putative class members are entitled to an award of $1,500.00 in statutory damages per violation.

109.   Plaintiff and the putative class members are also entitled to and seek injunctive relief prohibiting Blackstone's unlawful conduct in the future, pursuant to section 227(c)(5).

## COUNT IV
## VIOLATION OF THE FTSA, FLA. STAT. § 501.059(5)

110.    Plaintiff incorporates the allegations contained in paragraphs 1-65 as if fully set forth herein.

111.    The FTSA provides that "[a] telephone solicitor or other person may not initiate [a] … text message … to a consumer, business, or potential donor … who has previously communicated to the telephone solicitor or other person that he or she does not wish to receive an outbound … text message … made by or on behalf of the seller whose goods or services are being offered[.]" Fla. Stat. § 501.059(5).

112.    "Telephone solicitor" is defined as "a natural person, firm, organization, partnership, association, or corporation, or a subsidiary or affiliate thereof, doing business in this state, who makes or causes to be made a telephonic sales call[.]" Fla. Stat. § 501.059(1)(i).

113.    "Telephonic sales call" is defined as a "…text message … to a consumer for the purpose of soliciting a sale of any consumer goods or services[.]" Fla. Stat. § 501.059(1)(j).

114.    Black's Law Dictionary defines "service" as "the act of doing something useful for a person or company, usu[ally] for a fee." Black's Law Dictionary 1491 (9th ed.2009). *Wooten v. Quicken Loans, Inc.*, 626 F.3d 1187, 1193 (11th Cir. 2010).

115.    Blackstone sent text messages to Plaintiff and putative class members intended to solicit the sale of sleep studies and other services for a fee.

116.    Sleep studies are "consumer goods or services" within the meaning of Fla. Stat. § 501.059(1)(c).

117.    Blackstone's text messages intended to solicit the sale of sleep studies and other services were therefore "telephonic sales calls."

118.    Blackstone, as the entity placing the telephonic sales calls or causing them to be made, is therefore a "telephone solicitor."

119.    Plaintiff and putative class members requested Blackstone to stop sending them telephonic sales text messages, but Blackstone continued.

120.    Blackstone's continued text messages to Plaintiff and putative class members after they asked Defendant to stop sending the text messages, therefore violate Fla. Stat. § 501.059(5).

121.    Each member of the putative Class has constitutional standing as, by definition, each member expended the time and effort to ask Blackstone to stop, yet continued to be sent text messages, invading their privacy, further wasting their time, and constituting a personal nuisance.

122.    For violations of Fla. Stat. § 501.059(5), Plaintiff and putative class members are entitled to $500 per text message in statutory damages. Fla. Stat. § 501.059(10)(a).

123.    Plaintiff and putative class members are entitled to $1,500 per text message should the Court find the violations willful. Fla. Stat. § 501.059(10)(b).

**JURY DEMAND**

124.    Plaintiff hereby demands a trial by jury.

**DOCUMENT PRESERVATION DEMAND**

125.    Plaintiff demands that Blackstone take affirmative steps to preserve all records, lists, electronic databases or other itemization of telephone numbers associated with Defendant and the calls as alleged herein.

**WHEREFORE**, Plaintiff, individually and on behalf of the Classes, respectfully requests this Court grant the following relief:

> a)  An order certifying this case as a class action on behalf of the Classes as defined above, and appointing Plaintiff as the representative of the Classes and Plaintiff's counsel as Class Counsel;
>
> b)  An award of statutory damages for Plaintiff and each member of the respective Classes as applicable under the TCPA;
>
> c)  An order declaring that Blackstone's actions, as set out above, violate the TCPA;
>
> d)  An injunction requiring Blackstone to comply with 47 C.F.R. § 64.1200(d) by
>
>> 1)  maintaining the required written policies;
>>
>> 2)  providing training to their personnel engaged in telemarketing;

3) maintaining a do-not-call list;

4) and such further and other relief as the Court deems necessary.

e) An injunction requiring Blackstone to cease all unsolicited calling activity, and to otherwise protect the interests of the Class.

Dated: February 9, 2024.

Respectfully submitted,

By: /s/ Scott D. Owens
     Scott D. Owens, Esq.
     Florida Bar No. 0597651
     SCOTT D. OWENS, P.A.
     2750 N. 29th Ave., Ste. 209A
     Hollywood, FL 33020
     Telephone: (954) 589-0588
     Facsimile: (954) 337-0666
     scott@scottdowens.com

By: /s/Kimberly H. Wochholz
     Kimberly H. Wochholz
     Fla. Bar No. 0092159
     The Consumer Rights Law Group, PLLC
     P.O. Box 5326
     Sun City Center, FL 33571
     Phone: 813-413-5710
     Fax: 866-535-7199
     Kim@ConsumerRightsLawGroup.com